# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Case No. 10 C 7652** |
| **vs.** | ) | |
| | ) | **Judge Joan H. Lefkow** |
| **JOHN OROZCO,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## OPINION AND ORDER

John Orozco has moved under 28 U.S.C. § 2255 for an order vacating, setting aside, or correcting his sentence. He argues that he was denied the effective assistance of trial and appellate counsel in violation of the Sixth Amendment. For the reasons stated below, Orozco's § 2255 motion (dkt. 1) is denied, as is his motion to amend (dkt. 16).

## BACKGROUND

On December 5, 2002, Orozco, a felon, was arrested on a warrant for being in possession of a firearm. A one-count indictment was returned on January 15, 2003 charging violation of 18 U.S.C. § 922(g)(1). (Dkt. 11.)[1] Orozco was arraigned on January 27 and released under conditions pending trial. (Dkt. 16.)

Early on, the case was set for trial beginning October 1, 2003. (Dkt. 24.) On September 3, 2003, however, the government informed the court that it would file a superseding indictment, so the court struck the trial date. (Dkt. 26.) On September 10, 2003, a superseding indictment was returned that added a second count charging a conspiracy among Orozco, Juan

---

[1] Citations to docket numbers refer to the criminal case, *United States v. Orozco*, 02 CR 1164 (N.D. Ill.), unless otherwise indicated.

Corral, Jose Oliva, Jose Martinez and others to possess and distribute cocaine and marijuana beginning "not later than in or about 2000 and continuing until in or about December 2002," in violation of 21 U.S.C. § 846. (Dkt. 27.) Count Two specified that, as part of the conspiracy, Orozco supplied narcotics to members of the Aurora Latin Kings Street Gang ("the Gang") and used his affiliation with the Gang to distribute narcotics in Aurora to help fund the Gang. *Id*.

On October 14, 2003 Orozco filed a motion to suppress evidence seized during a search of his home. (Dkt. 33.) The motion was taken under advisement on December 10, 2003 and denied on February 25, 2004. (Dkt. 47.) Orozco moved to reconsider and asked for an evidentiary hearing. (Dkts. 50, 51.) The court granted an evidentiary hearing, which was held on May 7, 2004. The motion to suppress was denied on May 20, 2004 and trial was rescheduled to August 30, 2004. (Dkt. 60.)

On August 12, 2004, the government and Orozco jointly moved to continue the trial, asserting that several sentencing issues were pending before the United States Supreme Court that would likely affect Orozco. (Dkt. 61.) The motion was granted and the trial date was stricken. (Dkt. 62.) On February 9, 2005, trial was set for August 22, 2005. (Dkt. 67.) On August 16, 2005, the trial was reset by agreement to begin on October 31, 2005. (Dkt. 70.) On October 26, 2005, the trial was reset to begin on February 13, 2006. (Dkt. 72.) On February 1, 2006, the parties made a joint oral motion to continue the trial. Trial was reset to begin on June 12, 2006. (Dkt. 74.) On June 5, 2006, the government gave notice under 21 U.S.C. § 851(a)(1) of its intention to rely on a December 6, 1991 felony conviction for unlawful delivery of a controlled substance to seek an enhanced sentence under 18 U.S.C. § 841(b)(1). (Dkt. 77.) On June 7, 2006, the government moved to continue the trial by one week due to the unavailability of an essential witness and illness of a prosecutor assigned to the case. (Dkt. 87.)

On June 16, 2006, the trial was reset to begin on September 8, 2006. (Dkt. 88.) The case proceeded to trial on September 8, 2006. (Dkt. 33.) With each continuance the delay was excluded under a specific provision of the Speedy Trial Act, 18 U.S.C. § 3161 *et seq*.

According to evidence presented at trial,[2] Orozco was the "cacique," or second-in-command, of the Gang. He asked Jose Hernandez to sell cocaine and give profits back to the gang two or three times. He also sold 20 to 30 pounds of marijuana to Hernandez five or six times during the late 1990s and cocaine to Hernandez 10 to 12 times from 2000 to 2002. Orozco also sold cocaine to Juan Corral in 2000 and sold marijuana and cocaine to Jose Oliva in 2002. On December 5, 2002, law enforcement agents executed a search warrant and searched Orozco's residence. They seized a loaded gun, a holster, ammunition, and two digital scales having trace amounts of cocaine.

On September 19, 2006, the jury returned a verdict of guilty on both counts. (Dkt. 104.) With regard to Count Two, the jury found drug amounts in excess of five kilograms of cocaine and less than 50 kilograms of marijuana. (*Id.*) On December 1, 2006, he was sentenced to 120 months of imprisonment on Count One and a concurrent 360 months of imprisonment on Count Two. (Dkt. 121.) The judgment was affirmed on appeal. *United States* v. *Orozco*, 576 F.3d 745 (7th Cir. 2009). *Certiorari* was denied. *Orozco* v. *United States*, 559 U.S. 916, 130 S. Ct. 1313, 175 L. Ed. 2d 1095 (2010).

---

[2] During the trial, the government called Jose Hernandez (Trial Transcript ("Tr.") at 162-318); Corral (*id.* at 318-355, 384-455); Federal Bureau of Investigation ("FBI") Special Agent Neal Ormerod (*id.* at 361-383); Oliva (*id.* at 456-517, 528-532); FBI Special Agent Paul Bock (*id.* at 533-609); Aurora Police Officer Dan Woods (*id.* at 609-617); Agent Burress (*id.* at 617-637); FBI Agent Kevin Long (*id.*at 637-653); FBI Evidence Technician Marilyn Montgomery (*id.* at 654-674); FBI Agent Robert Fortt (*id.* at 674-684); Drug Enforcement Administration ("DEA") Forensic Chemist Odiest Washington (*id.* at 685-765); and Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") Special Agent Mark Anton (*id.* at 766-774).

Orozco is now serving his sentence. Orozco's § 2255 motion was timely filed on December 1, 2010. See 28 U.S.C. § 2255(f)(1).

## LEGAL STANDARD

Relief under § 2255 "is reserved for extraordinary situations." *Hays* v. *United States*, 397 F.3d 564, 566 (7th Cir. 2005) (quoting *Prewitt* v. *United States*, 83 F.3d 812, 816 (7th Cir. 1996)). A district court must grant a § 2255 motion when the petitioner establishes "that the district court sentenced him in violation of the Constitution or laws of the United States or that the sentence was in excess of the maximum authorized by law or is otherwise subject to collateral attack." *Hays*, 397 F.3d at 566-67 (quoting *Prewitt*, 83 F.3d at 816). It is proper to deny a § 2255 motion without an evidentiary hearing if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b).

In order to establish constitutionally ineffective assistance of counsel, the petitioner must show (1) "that counsel's representation fell below an objective standard of reasonableness" and (2) "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland* v. *Washington*, 466 U.S. 668, 688, 694, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). To satisfy the performance prong of the *Strickland* test, the petitioner must direct the court to specific acts or omissions of his counsel. *See United States* v. *Trevino*, 60 F.3d 333, 338 (7th Cir. 1995). The court must then consider whether, in light of all the circumstances, counsel's performance was outside the range of professionally competent assistance. *Id.* There is a strong presumption that counsel's performance was effective, *id.*, and the court must not let hindsight interfere with its review of counsel's decisions. *See Harris* v. *Reed*, 894 F.2d 871, 877 (7th Cir. 1990) (citing *Strickland*, 466 U.S. at 697). Under the prejudice prong, to establish the reasonable probability that the

outcome would have been different, the petitioner must show "a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. A court need not address both prongs of the *Strickland* test if one provides the answer; that is, if a court determines that the alleged deficiency did not prejudice the defendant, the court need not consider the first prong. *See United States* v. *Fudge*, 325 F.3d 910, 924 (7th Cir. 2003) (citing *Matheney* v. *Anderson*, 253 F.3d 1025, 1042 (7th Cir. 2001)).

## ANALYSIS

### I. Ineffective Assistance of Counsel

Orozco makes five claims contending that trial counsel or appellate counsel were ineffective under the *Strickland* test.

### A. Whether Trial counsel was ineffective for failing to move to dismiss based on violations of the Speedy Trial Act ("STA").

#### 1. Indictment

The STA requires that an indictment be returned within 30 days after the date the defendant is arrested. 18 U.S.C. § 3161(b). Orozco contends that trial counsel was ineffective because he failed to move to dismiss once the indictment was returned more than thirty days after his arrest. Likewise, he faults appellate counsel for failing to raise the issue on appeal. The government responds that the STA was not violated because the court properly enlarged the time to return an indictment and the indictment was filed within the enlarged time.

The STA excludes from the 30-day time limit a period of delay granted by the court if it is based on the court's finding "that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial." 18 U.S.C. § 3161(h)(7)(A), However, "[n]o such period of delay resulting from a continuance . . . shall be excludable . . . unless the court sets forth, in the record of the case, either orally or in writing, its reasons for

[this] finding[.]" *Id.; see also United States* v. *Janik*, 723 F.2d 537, 544-45 (7th Cir. 1983) ("If the judge gives no indication that a continuance was granted upon a balancing of the factors specified [under (h)(7)(A)] until asked to dismiss the indictment for violation of the Act, the danger is great that every continuance will be converted retroactively into a continuance creating excludable time, which is clearly not the intent of the Act.").

The government presented an *ex parte* motion to then-Chief Judge Kocoras asking for a 14-day extension of time to indict because the grand jury would not be sitting during the weeks of December 23 and December 30, 2001, making it "unreasonable to expect the government to complete its investigation and to have the indictment or information returned and filed within the 30-day period specified in section 3161(b)." (Dkt. 6 at 2.) On December 19, 2002, the Chief Judge entered an order extending the time within which to file an indictment to January 18, 2003. The court found "that the ends of justice served by the extension outweigh the best interests of the public and the defendant in a speedy trial because it is unreasonable to expect the return and filing of an indictment before January 18, 2003, in light of the need for the government to have sufficient time to conduct the investigation and make a proper charging decision." (Dkt. 6, Ex.2.)[3] The motion and order properly set out on the record the Chief Judge's reasons for his finding. Thus, the STA was not violated and counsel cannot be faulted for failing to move to dismiss the indictment on that basis.

## 2. Trial

Orozco next claims that his counsel was ineffective for failing to insist on a speedy trial within 70 days of his arraignment as to both the original and the superseding indictments. *See* 18 U.S.C. §3161(c)(1). He argues that the government could certainly have tried him on the felon-

---

[3] The documents were originally filed under seal. The court lifted the seal on May 21, 2014. (Dkt. 154.)

in-possession charge within 70 days, and he complains that the continuances granted did not comply with the requirement that the court place on the record the reasons for its finding that the ends of justice justified each delay. The government responds that Orozco does not cite any particular exclusion of time that was improperly granted under the STA or cite any record evidence showing that reasons were not stated in compliance with the STA. In any event, the government argues, Orozco cannot show prejudice resulting from his counsel's not bringing a motion to dismiss under § 3162 because, if the indictment had been dismissed, it would likely have been without prejudice and the government could have reindicted Orozco.

The record reflects that twelve continuances of the trial were granted. Trial on the superseding indictment began approximately three years after Orozco's arraignment and nearly four years after his arrest. Although nearly four years is a long time between arrest and trial, the government is correct in asserting that Orozco has not demonstrated that time was wrongly excluded under the STA. Even if he had, the continuances were granted either with the consent of counsel or without his objection. As such, the issue was waived on appeal, *see e.g.*, *United States* v. *Morgan*, 384 F.3d 439, 442-43 (7th Cir. 2004), such that appellate counsel cannot be faulted. Thus, Orozco must show that his trial counsel's failure to raise the issue was objectively unreasonable and that Orozco was prejudiced, *i.e.*, that but for the counsel's errors it is reasonably probable that the result of the proceeding would have been different.

Certainly defense counsel's motion to suppress and his successful motion for reconsideration (dkts. 33, 50) were objectively reasonable actions although they entailed approximately seven months of delay. The joint motion to await trial pending Supreme Court rulings was also reasonable, as the anticipated decisions could have benefitted Orozco. (Dkt. 61.) Specifically, when the motion was filed, the Court had recently held in *Blakely* v.

*Washington*, 542 U.S. 296, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004), that a state judge who imposed an above-guidelines "exceptional" sentence, based on his finding that the defendant had acted with deliberate cruelty, violated the defendant's right to trial by jury. *Id.* at 313-14. Less than one month before Orozco's trial was scheduled to begin, the Court granted *certiorari* in *United States* v. *Booker*, 542 U.S. 956, 125 S. Ct. 11, 159 L. Ed. 2d 838 (2004). *Booker* raised a similar issue with respect to the federal sentencing guidelines and ultimately held as in *Blakely* that the sentencing judge could not enhance a defendant's sentence beyond the maximum penalty that could be based on facts reflected in the jury verdict or admitted by the defendant. *United States* v. *Booker*, 543 U.S. 220, 233, 125 S. Ct. 738, 160 L. Ed. 2d 621 (2005). The case also raised the issue whether federal sentencing guidelines were mandatory. *Booker*, decided on January 12, 2005, held that the guidelines must be read as advisory to be consistent with the Sixth Amendment and Congressional intent. *Id.* at 259. Counsel's action in asking for a continuance was obviously directed at protecting his client and he cannot now be faulted because it entailed approximately five months of delay. Moreover, Orozco does not profess to have urged his counsel to press for a speedy trial and, since he had been released pending trial, it is unlikely that he would have been motivated to do so.

Ultimately, however, even if counsel's conduct had been objectively unreasonable, Orozco cannot show prejudice because the record indicates that dismissal of the indictment for violation of the STA would have been without prejudice to indicting Orozco afresh. *See* 18 U.S.C. § 3162(a)(2). As stated in *United States* v. *Sykes*, 614 F.3d 303 (7th Cir. 2010), the district court has substantial discretion to determine whether to dismiss an indictment with or without prejudice. *Id.* at 309. The court is to consider factors including "the seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of a

reprosecution on the administration of [the STA] and the administration of justice.'" *Id.* (quoting 18 U.S.C. § 3161(a)(2)). The charges against Orozco were serious, entailing an onerous penalty. A substantial share of the delay had been for reasons obviously serving the defense. Further, a new indictment would have led to the same result. The evidence at trial included testimony of cooperating witnesses who had engaged in undercover transactions with Orozco and law enforcement agents, including an agent who testified to admissions made by Orozco as well as the incriminating evidence recovered during the search of Orozco's home. Orozco, on the other hand, points to no prejudice at trial such as an exonerating witness whose testimony was compromised because of the delay. For all of these reasons, Orozco cannot show that he is entitled to relief under § 2255 because of claimed violation of his rights under the STA.

**B.    Whether trial counsel was ineffective for failing to file a motion to sever the two counts of the superseding indictment or, at the very least, for failing to object to the prosecutor's statement to the jury that the crimes were connected.**

**1.    Joinder of Counts**

Orozco claims that his counsel should have sought severance of the gun count from the narcotics conspiracy count in order to avoid the jury's learning of the 1991 felony conviction that was an element of proof of the gun count. He contends that the evidence tainted the jury's consideration of the conspiracy count. Further, he argues that the two counts should have been severed because they were separated in time and unrelated. The government responds that joinder of the counts was proper and, even if the two counts had been tried separately, the evidence of the firearm would have been admitted into evidence in the conspiracy case.

Furthermore, it would make no difference in the outcome since the sentences on the two counts ran concurrently.[4]

Orozco argues that he was prejudiced by admission of evidence of a prior conviction. (*See* Orozco's Memorandum in Support, *United States* v. *Orozco*, No. 10 C 7652 (N.D. Ill. Dec. 1, 2012), ECF No. 4 at 12 ("Orozco's Memorandum in Support") ("The two offense(s) . . . should have been severed in order to avoid any prejudicial spill-over from the prior conviction evidence into the jury's consideration of guilt on the drug conspiracy charged in Count-2.").) Because there were two prior convictions that came into evidence, clarity is needed. One was a 1994 unlawful use of a weapon ("UUW") conviction, admitted for the limited purpose of showing that on a prior occasion defendant used his right hand to handle a firearm. The other was the 1991 narcotics conviction, admitted to prove in Count One that Orozco was a felon. Orozco apparently means to contend that evidence concerning the UUW conviction tainted the trial on Count Two, as he submits "that without the (firearm) evidence there is a reasonable probability that petitioner would have been acquitted on the conspiracy count." *Id.* at 18-19; *see also id.* at 15 ("Counsel also knew or should have known the 1994 prior conviction itself was 'possession of a firearm', and shows the propensity of the defendant to possess firearms.") The reply memorandum focuses entirely on the admission of the firearm. The analysis below assumes that the UUW conviction is the issue.

Federal Rule of Criminal Procedure 8 permits joinder of offenses when they (1) are of the same or similar character, (2) are based on the same act or transaction, or (3) are connected as parts of a common scheme or plan. Fed. R. Crim P. 8(a). If the conspiracy existed when the December 2002 search occurred, joinder would be proper as a common scheme or plan. Orozco

---

[4] Had Orozco been found not guilty of conspiracy, however, the outcome would have been a significantly lower sentencing range.

argues, however, that the conspiracy ended in July 2002 when his co-conspirators were arrested and began cooperating with law enforcement.  (Orozco Memorandum in Support at 12.)  He cites *United States* v. *Thomas*, 284 F.3d 746, 753 (7th Cir. 2002), for the proposition that once co-conspirators begin to cooperate the conspiracy is at an end.  *Thomas* observed that the alleged conspiracy came to an end once every putative member of the conspiracy but the defendant was cooperating with the government.  *Thomas*, 284 F.3d at 754-55 (citing *United States* v. *Contreras*, 249 F.3d 595, 599 (7th Cir. 2001); *United States* v. *Mahkimetas*, 991 F.2d 379, 383 (7th Cir. 1993)).[5]

Here, by contrast, the superseding indictment charged a conspiracy including "others" besides the cooperating witnesses.  The government presented evidence that during the 1990s through December 2002, Orozco was a member of and, at the time of his arrest, second-in-command of the Gang; that one of the main businesses of the Gang was dealing drugs; that Orozco was one of the chief drug dealers; and that Orozco and others Gang members would front cocaine to the Gang's treasury and Gang members would sell the drugs, returning profits to the treasury.  Orozco also made implied admissions in December 2002, including that he belonged to the Gang and, in response to a question about an October 2002 mass arrest of Gang members, that "he would not cooperate, and if he had time coming he would serve his time."  (Trial transcript ("Tr.") at 545, testimony of Bock.)  The cooperating witnesses testified to transactions with and by Gang members that occurred before their arrests, as well as after.  There was sufficient evidence for the jury to infer that the conspiracy continued during the period in which the testifying witnesses were cooperating until the time of the search.  As such, the two crimes were parts of a common scheme or plan.

---

[5] *Mahkimetas* held co-conspirator statements were not admissible against the defendant where the defendant had agreed solely with a government agent or informant to commit a crime, as no conspiracy "in the legal sense" existed.  *Mahkimetas*, 991 F.2d at 383.

Moreover, there is no basis in the record to infer that, at some point before his arrest, Orozco's dealing drugs along with Gang members ceased. Thus, the principle cited in *Thomas* does not apply here. It follows, then, that the counts were properly joined under Rule 8 of the Federal Rules of Criminal Procedure. *See United States* v. *Hubbard*, 61 F.3d 1261, 1270 (7th Cir. 1995) ("[W]here firearms have been discovered along with evidence of a defendant's drug trafficking, joinder of firearms and weapons charges has been approved due to the natural inferences that may be drawn from the contemporaneous possession of guns and drugs or drug paraphernalia[.]"); *United States* v. *Cox*, 934 F.2d 1114, 1119 (10th Cir. 1991) (firearm-possession count was properly joined with narcotics conspiracy count where defendant possessed firearm within the time frame of the conspiracy and firearm was found in same vehicle as drugs).[6]

### 2. Failure to Object to Prosecutor's Statements

Orozco next argues that trial counsel was ineffective because he did not object to the government's statements in opening and closing that the gun found in his home was connected to the conspiracy. He asserts that no witness testified to having seen Orozco with a gun during any drug transaction. Rather, the only testimony connecting the gun to the conspiracy was the forensic chemist who testified that trace amounts of cocaine were found on a scale, which was

_____

[6] Orozco cites *United States* v. *Singh*, 261 F.3d 530 (5th Cir. 2001), which concluded that joinder of a felon-in-possession charge with a charge of harboring illegal Indian aliens was improper. *Id.* at 533. The court there ruled that admission of evidence to prove the gun count, including that the defendant had five years earlier been involved in a gun transaction with other Sikhs, photographs of the defendant with assault-type rifles, and testimony that he always carried a gun, prejudiced the defendant on the harboring aliens count such that he was denied a fair trial. It observed that the evidence on the gun count was weak—the defendant had been found not guilty—and there was no "significant" evidence that the defendant had used the gun described in that count to intimidate the aliens. *Id.* At the same time, the evidence of the prior conviction and defendant's previous involvement with guns "was arguably determinative" as to whether the jury would believe the defendant, who contended he did not know the aliens were in the country illegally. *Id.* at 534. Here, there was ample evidence against Orozco on the conspiracy count, not the least of which was testimony of the cooperating witnesses, who had engaged in repeated transactions with him. There is no reasonable probability that he would not have been convicted had the felon-in-possession count been severed.

found in a different room from the gun. He believes that had counsel challenged this "theory of the case" he would not have been prejudiced by joinder of the counts.

The government was entitled to tell the jury its theory of the case so long as it was based on the evidence. At trial, FBI Special Agent Ken Burress testified that during the December 2002 search he found a loaded semi-automatic Berretta hand gun under the mattress in Orozco's bedroom. (Tr. at 620.) FBI Special Agent Neal Ormerod testified that during the search he found a holster in Orozco's bedroom closet and that a holster is primarily used to carry a concealed firearm. (Tr. at 364-368.) The jury was entitled to believe that the gun and holster were connected to Orozco's drug trafficking. Second, defense counsel argued to the jury that the gun belonged to Orozco's wife, that it was not in the same room as the scale, and that evidence of the gun's having been used in connection with the conspiracy was lacking. Thus, the jury was aware of Orozco's conflicting theory that the gun was not related to the conspiracy. (*See, e.g.,* Tr. at 850.)

*Burns* v. *Gammon*, 260 F.3d 892 (8th Cir. 2001), which Orozco cites, did conclude that a failure to object to the prosecutor's statement in closing argument was ineffective assistance. *Gammon* was a state habeas challenging a rape conviction. *Id.* at 896. Defense counsel had failed to object to the prosecutor's statement made in rebuttal argument that the defendant, by exercising his right to a jury trial, forced the victim to attend the trial, testify and relive the attack. The court ruled that counsel was ineffective for failing to object because the statement used the defendant's exercise of a specific fundamental constitutional guarantee against him at trial. *Id.* Here, by contrast, evidence of the gun was relevant to the narcotics conspiracy so counsel had no legitimate basis to object to the government's theory of the case. *See*, *e.g*., *United States* v. *Ramirez*, 45 F.3d 1096, 1103 (7th Cir. 1995) (evidence of weapon properly

admitted evidence about gun under "tools of the trade" theory, because "weapons are tools of the narcotics trade").

### 3.    Prejudice

Since Orozco has not shown that his counsel's representation fell below an objective standard of reasonableness in failing to seek severance or failing to object to the prosecutor's statements in opening and closing, the court need not address the argument that, had he done so, the outcome would probably have been different.

**C.    Whether trial counsel was ineffective for "opening the door" to introduction of facts concerning a prior conviction by asserting that Orozco was left-handed and would not have used a right-handed holster.**

The government and Orozco stipulated that the threshold felony conviction for the gun count would not disclose the nature of the crime, which was 1991 conviction in DuPage County circuit court of unlawful delivery of a controlled substance. Agent Neal Ormerod had testified that he found a holster that was set up for right handed use in defendant's bedroom closet. He testified that the firearm found under the mattress on Orozco's bed fit the holster. In cross-examining the witness, defense counsel tried to demonstrate that, because Orozco was left-handed, the right-handed holster found in his home was not Orozco's. This was consistent with his argument that the gun and holster belonged to Orozco's wife, which is what Orozco had told FBI Special Agent Paul Bock during questioning after the search. (Tr. at 547.) The court ruled that the defense had opened the door to the facts underlying the prior conviction and granted the government's motion under Rule 404(b) to call Aurora officer Dan Woods to testify that in 1994 Orozco pulled a gun from his waistband with his right hand and threw it to the ground. (Tr. at 609-16.) It excluded evidence of the type of firearm (a .44 magnum) and gave a limiting instruction to consider the evidence only in regard to "whether the defendant uses his right hand

for firearms." (Tr. at 900-01.) Orozco's motion for a new trial on this basis was denied and the ruling was upheld on appeal. *Orozco*, 576 F.3d at 751. Orozco now argues his counsel was ineffective because he did not move for a mistrial on the narcotics conspiracy count and appellate counsel was ineffective in failing to raise the issue on appeal. The government responds that, although counsel's strategy was unsuccessful, it is not grounds for relief.[7]

Orozco cites *Nero* v. *Blackburn*, 597 F.2d 991 (5th Cir. 1979), in which the court held that a petitioner established ineffective assistance where his counsel failed to move for a mistrial after the prosecutor informed the jury in closing argument of the defendant's three prior felony convictions. *Id.* at 994. It was significant that, had counsel moved for a mistrial, Louisiana law required that it be granted. *Id.* (citing La. Code Crim. Proc. Ann. art 770). The court also determined that the jury may well have convicted because of the prejudicial remarks. Orozco also relies on *United States* v. *Febus*, 218 F. 3d 784 (7th Cir. 2000), in which the court rejected the argument that it was error for defense counsel not to ask a cooperating witness about a topic that might have opened the door to evidence that the witness had been involved in organized crime. *Id.* at 797. On the contrary, it stated, "That was a reasonable strategy." *Id*. at 798. In response, the government relies on the principle that "a retrospective vista is precisely the wrong perspective from which to determine whether a criminal defendant received effective assistance." *See United States* v. *Figueroa*, 15 F.3d 706, 710-11 (7th Cir. 1994) ("That events at trial did not unfold as favorably as hoped does not retroactively transmute legitimate strategy into ineffective assistance.").

Orozco is not entitled to relief on this claim. First, counsel's decision to cross-examine was in support of a defense theory that Orozco's wife owned the gun. Although counsel might

---

[7] The government also argues that trial counsel did not know that Orozco had previously used his right hand to hold a gun. It does not cite the record for this statement. The argument is therefore disregarded.

have called the wife to testify, he undoubtedly thought that unwise.  Since the gun had been found under Orozco's mattress, his options were limited.  The choice was within the range of reasonableness, even though counsel may not have anticipated the danger that the prior conduct would be allowed into evidence.  But counsel was not in the same position as in *Nero* where it could not have been a strategic decision to fail to move for mistrial.  And *Febus* merely supports the proposition on which the government relies, that retrospection does not transmute counsel's reasonable decision at trial into ineffective assistance.

It is highly unlikely in any event that, had the evidence been excluded, Orozco would have been found not guilty of the narcotics conspiracy charge.  The other evidence against him offered through law enforcement officers and cooperating witnesses was substantial.

Finally, Orozco faults his appellate counsel for failing to assert that trial counsel was ineffective for opening the door to Officer Woods' testimony.  Since *Massaro* v. *United States*, 538 U.S. 500, 504, 123 S. Ct. 1690, 155 L. Ed. 714 (2003), however, there can be no procedural default for failing to raise ineffective assistance on appeal.  Moreover, the Seventh Circuit has made it clear that ineffective assistance claims are preferably raised on collateral review.  *See, e.g.*, *United States* v. *Harris*, 394 F.3d 543, 557 (7th Cir. 2005) ("Each of the judges on the panel cautioned counsel on the perils of going forward with the [ineffective assistance] claim at this stage of the appeals process, especially in light of this Court's history of declining to reverse convictions in these circumstances."); *United States* v. *Farr*, 297 F.3d 651, 657 (7th Cir. 2002) ("We note that this court often cautions defendants that an ineffective assistance of counsel claim is best raised on a motion for habeas corpus, and not on direct appeal.") (citing *United States* v. *Godwin*, 202 F.3d 969, 973 (7th Cir. 2000)).  Appellate counsel was not ineffective on this basis.

**D. Whether trial counsel was ineffective for failing to challenge the introduction of evidence of activities occurring before "on or about 2000" to prove the drug conspiracy offense, and whether the indictment was constructively amended by introduction of the evidence and a jury instruction.**

Orozco contends the court erred in allowing two cooperating witnesses, Hernandez and Oliva, to testify about Orozco's drug dealing that occurred in 1997 and 1998 because it predated the time frame beginning "in or about 2000" as well as to Orozco's gang membership dating back to 1989. He argues that counsel's failure to object was ineffective assistance. He also argues that the evidence constructively amended the superseding indictment. The government responds that the evidence was properly admitted, and it did not amend the superseding indictment. Nor was defendant prejudiced. As such, counsel's failure to object was not ineffective assistance.

Orozco cites a number of cases concerning a lapse between the date alleged in the indictment and the date proved. *See United States* v. *Rodriguez*, 215 F.3d 110, 117 (1st Cir. 2000) (proof of participation in a conspiracy in October was sufficiently close to "in or about September"); *United States* v. *Escobar-de Jesus*, 187 F.3d 148, 167-68 (1st Cir. 1999) (participation on March 26 was sufficiently close to "in or about April"); *United States* v. *Kokotan*, 408 F.2d 1134, 1138 (10th Cir. 1969) (a two-week period between the alleged date and the proved date of the offense was sufficiently close). These cases, by rejecting a particular argument that a month or two months was too remote, do not stand for the proposition that a longer period of time would be too distant.

Orozco does better with his reference to *United States* v. *Ross*, 412 F.3d 771 (7th Cir. 2005), which resulted in reversal where the indictment charged the felon-in-possession defendant with possessing the weapon "on or about September 8, 2002," but the jury was instructed it could convict if the defendant possessed a weapon on or after May of 1998. *Id*. at 774-75. Reversing

as too temporally distant from the charge, the court stated, "the grand jury probably thought it was indicting Ross for possessing a pistol [on September 8, 2002]." The instructions, however, permitted the jury to convict him for possessing a shotgun four years earlier. *Id*. at 775.

The situation in Orozco's case was quite different. Unlike the facts in *Ross*, Orozco was on trial for an ongoing conspiracy. Orozco's membership and leadership in the Gang was historical evidence that was important to the government's proof of his central role in the conspiracy. In context, that the cooperating witnesses had dealt with Orozco in connection with the Gang's drug dealing in the past two or three years was not remote but, rather, evidence of an ongoing enterprise in which Orozco intentionally participated throughout the time period alleged. Moreover, Orozco does not contend that there was any break in his or the Gang's activities from 1997 through 2000 that would lend credence to his argument. As such, the evidence was properly admitted and counsel's alleged failure to object was not ineffective assistance of counsel. Furthermore, the government is correct that Orozco cannot show prejudice. The jury was instructed to consider the earlier transactions for "the limited purpose of evaluating whether the defendant, from in or about 2000 to in or about December 2002, intended to conspire [ ] to possess with intent to distribute and to distribute controlled substances." (Tr. at 901.)

Likewise, Orozco's argument that the indictment was constructively amended must fail. "A constructive amendment to an indictment occurs when either the government, the court, or both, broadens the possible bases for conviction beyond those presented by the grand jury." *United States* v. *Folks*, 236 F.3d 384, 390 (7th Cir. 2001) (citations, ellipses and internal quotation marks omitted). "To avoid running afoul of the Fifth Amendment, the allegations in the indictment and the proof at trial must match in order to insure that the defendant is not subject to a second prosecution, and to give the defendant reasonable notice so that he may

prepare a defense." *Id.* (internal quotation marks and citation omitted). "Unless the particular date is an element of the alleged offense, it is generally sufficient to prove that the offense was committed on any day before the indictment and within the statute of limitations." *United States* v. *Leibowitz*, 857 F.2d 373, 378 (7th Cir. 1988) (citations omitted).

The superseding indictment charged a conspiracy "[b]eginning on a date unknown to the Grand Jury but not later than in or about 2000 …." (Dkt. 27 at 2.) As stated above, the evidence was historically significant and relevant to Orozco's intent. There is no concern here that he did not have opportunity to prepare a defense, as he had complete discovery of the witnesses' statements in advance of trial and thoroughly cross-examined the witnesses. The government also gave notice of this evidence in its *Santiago* proffer. (*See* dkt. 84.) As stated in *Folks*, "none of the concerns raised by alleged constructive amendments—namely, impairment of the ability of a defendant to prepare a defense and the possibility of double jeopardy—are in play in this case." *Folks*, 236 F.3d at 392.

## E.    Whether errors made at sentencing were the result of ineffective assistance of counsel.

Orozco makes two arguments that counsel was ineffective in failing to argue against a two-point enhancement under section 2D1.1(b)(1) of the U.S. Sentencing Guidelines Manual ("the Guidelines") (enhancement for possession of a firearm in connection with defendant's drug distribution) and a four-point enhancement under section 3B1.1(a) of the Guidelines (enhancement for acting in a leader or organizer role). Counsel did oppose both enhancements (Tr. of December 1, 2007, at 6-9, 15-17) but he did not argue that the section 2D1.1(b)(1) enhancement was double counting because the firearm justifying the enhancement was the same firearm that supported the felon-in-possession conviction. *United States* v. *Bustamante*, 493 F.3d 879 (7th Cir. 2007), held this was impermissible double counting. *Id.* at 889-90. The issue was

not raised on appeal, even though *Bustamante* was decided while Orozco's direct appeal was pending. Had it been raised, it would have succeeded. Unfortunately for Orozco, however, he cannot show prejudice. Even if the rule of *Bustamante* had been applied, his custody range under the Sentencing Guidelines would still have been 360 months to life in prison.[8] Thus, this claim also fails.[9]

## II.     Motion to Amend Petition

On October 9, 2013, Orozco filed a motion for leave to amend his § 2255 motion. (*See* Orozco's Motion to Amend ("Motion to Amend"), *United States* v. *Orozco*, No. 10 C 7652 (N.D. Ill. Oct. 9, 2013), ECF No. 16 ("Orozco's Memorandum in Support").) He seeks to add the claim that under *Alleyne* v. *United States*, -- U.S. ---, 133 S. Ct. 2151, 186 L. Ed. 314 (2013), his sentence violated his right to have aggravating factors presented to a jury. He also argues that under the "actual innocence" exception to the default rule, *McQuiggin* v. *Perkins*, -- U.S. ---, 133 S. Ct. 1924, 185 L. Ed. 2d 1019 (2013), he should be allowed to argue that "newly discovered evidence" demonstrates that the sentencing enhancement was wrongly applied. (Motion to Amend at 2.) Although the first argument is untimely because it does not relate to any claim Orozco made in his original petition, *see Mayle* v. *Felix*, 545 U.S. 644, 662-64, 125 S. Ct. 2562, 162 L. Ed. 2d 582 (2005), the court will address both.

---

[8] Additionally, as noted, Orozco's counsel did object to the four-point enhancement for acting as an organizer or leader. Orozco's counsel and counsel for the government engaged in extensive argument about this (Tr. at 15-20) and the court ultimately determined that the government presented enough evidence to show Orozco merited the enhancement. Counsel's acts were not objectively unreasonable in this regard.

[9] Orozco relies on *Bustamente*, a related case, to argue that a ledger recovered at one defendant's home was insufficient to prove the defendant participated in a hub and spoke conspiracy. He fails to demonstrate why the ledger is essential to his case or why counsel was ineffective for failing to present it.

### A.    Effect of *Alleyne*

*Alleyne* is not to be applied retroactively to cases on collateral review.  *See Simpson* v. *United States*, 721 F.3d 875, 876 (7th Cir. 2013).  Even if applied, *Alleyne* would be unavailing here.

*Alleyne* held that any fact that increases the mandatory minimum sentence for a crime is an element of the crime rather than a sentencing factor and, as such, that element must be found by a jury beyond a reasonable doubt.  133 S. Ct. at 2155.  In *Alleyne*, the sentencing judge made a finding that the defendant had "brandished," as opposed to merely "possessed," a firearm in connection with a crime of violence.  This finding increased the mandatory minimum for his crime from five to seven years, as brandishing qualified as an aggravated offense.  *Id.* at 2156.

Here, unlike in *Alleyne*, the jury found beyond a reasonable doubt that Orozco was responsible for distribution of more than five kilograms of cocaine and less than 50 kilograms of marijuana.  (Dkt. 104.)  Penalties for possession with intent to distribute controlled substances are set out at § 841(b). (The penalty for conspiracy to commit an offense is the same as the penalty for that offense. *See* 21 U.S.C. § 846.)  Under § 841(b)(1) the drug amount plus the prior conviction resulted in a mandatory minimum of 20 years in prison.  Orozco received the rights protected by *Alleyne.*

### B.    Enhancement

Orozco's second argument is not untimely because it relates to one of his original claims.  Thus it is unnecessary to call on *McQuiggin* for amending his pleading.  Orozco, however, adds nothing new to his earlier argument that sentencing enhancements were wrongly applied.  Moreover, the "newly discovered evidence" to which he cites is a ledger that came up in a related Seventh Circuit decision.  *See Bustsamente*, 493 F.3d at 886.  But he argued that this

ledger demonstrated that he was not an organizer or leader in his original § 2255 petition, and presents no other new evidence. This ledger is no the "evidence of innocence so strong that a court cannot have confidence in the outcome of the trial" that the Supreme Court contemplated in *McQuiggin*. 133 S. Ct. at 1936 (quoting *Schlup* v. *Delo*, 513 U.S. 298, 316, 115 S. Ct. 851, 130 L. Ed. 2d 808 (1995)). As stated above, because Orozco cannot show prejudice, he cannot succeed on this claim.

## CONCLUSION AND ORDER

For the reasons stated above, the record of the case shows conclusively that Orozco is entitled to no relief. Therefore, the motion under 28 U.S.C. § 2255 to vacate, set aside, or correct the sentence (dkt. 1) is denied. The motion for leave to amend the petition (dkt. 16) is denied. The case is terminated.

ENTER:

Dated: June 19, 2014

_Joan H. Lefkow_

JOAN HUMPHREY LEFKOW
United States District Judge